*112 By the Court,
Bronson, J.
If there was no variance between the declaration and the evidence, and the case was fully made out on the trial, I think the plaintiff was,entitled to .recover, and that the verdict in his favor should not be disturbed. If the defendant, .Tourtellot, had not been a partner of the plaintiff at the time the goods were sold, there can be no doubt that Porter & Co. could have recovered against the defendants in an action for goods sold and delivered, whether there had been any new promise or not. It appears from the case that although the goods were, as a matter of convenience, charged to Nathan Taylor, the credit Was neither given to him. nor his associate in .the contract, but to the defendants. It was. a sale of goods to the defendants, with a delivery by their direction to a third person. .In-such a case the count may state generally a sale and delivery of .the goods, to . the defendants, for that is the-legal effect of the transaction. Bull v. Sibbs, 8 T. R. 327, 8. 1 Chit. Pl. 339. Lawes on Pl. in Assumpsit, 451, 466. But as the defendant Tourtellot was the partner of Porter at the time the debt was contracted, the action would necessarily have to be brought in both of their pames, and- this would involve the absurdity of making one man both plaintiff and defendant on.the same record. Mainwaring v. Newman, 2 Bos. & Pul. 120. Although-Tourtellot had assigned his interest in the debt to the plain-tiff, the action -must still be brought in the name of the original parties. 1 Chit. PI. 10. . If the debt to Porter & Co. had been secured to them by a negotiable instrument, they might have indorsed, and made it payable to Porter alone. Russell v. Swan, 16 Mass. R. 314. But such was not the case, and the plaintiff, to maintain the action -.in his own name aloné, was consequently obliged to resort to a new promise made to him- after the assignment.
Assuming that the declaration is in the proper form, and that the prior indebtedness and the assignment to the- plaintiff, would constitute a good consideration for an undertaking by the defendants to pay the debt to the plaintiff, still the plaintiff could not maintain the action without proving that a new promise was in fact made by both of the defendants. It is not a case where the law will imply a promise, and if none has been madé, the plaintiff has not resorted to the right forum for redress. I think a promise by Tourtellot was sufficiently proved. ’ The clerk of Porter & Co, swears, that at the time of the dissolution, and after the papers had been executed, the plaintiff spoke-of the account on the books against-Nathan Taylor ; and, addressing Tourtellot, said: “I suppose you and the General will see this account of Taylor' settled,” and that Tourtellot replied, “I will,” or “ we will,”, the witness could not recollect which; he understood that' both were to pay, as that -was the original understanding. The defendant M’Clure was-not present at this time, but a subsequent conversation between him and'the plaintiff was proved, in which he said they would pay to the plaintiff all they owed the Taylors; that-the Taylors had failed to fulfil their agreement, and he denied being under any legal liability to pay them any thing. He said their work- would come to about $600; but repeated his denial of any legal liability to pay them any thing, and offered to submit to men to decide what he owed the Taylors, and would- pay it to the plaintiff; again protesting that he owed them nothing. The grounds upon which M’Clure denied his liability to pay the Taylors were, that the work was not done by the time they agreed to do it; that it was not done in the manner agreed upon, and that the frame was insufficient. This is all the evidence that was given on this point in relation to M’Clu're, and, in my judgment, it does, not make out a new promise on his part. He said they would pay the plaintiff all they owed the Taylors, but accompanied it with an express denial - that they owed; or were under a legal liability to pay any thing. It is impossible to say. that this amounted to. a promise to pay the $600 to the plaintiff. In Lawrence v. Hopkins, 13 Johns. R. 388, the defence was the statute- of limitations. The defendant did not deny having made the contract, but said he-never considered himself liable to pay any thing; that it *113 was an unjust debt. The court said, that to infer a promise to pay, in direct opposition to the defendant’s denial of the justice and fairness of the debt, would be trifling with the statute. It is no answer to this objection to say, that M’Clure, having ordered the goods from Porter & Co , was under a legal as well as moral obligation to pay for them. That does not touch the question. The point is, whether Porter, suing alone, can recover; and it is admitted that he cannot, without a new promise. The defendants did not contract with him; and however unjust it may be in M’Clure to refuse payment, or a promise of payment, to the plaintiff, -this action cannot be maintained without overturning well established principles of law.
To obviate this objection, it has been argued, on the part of the plaintiff, that the defendants were partners, and that the promise made by Tourtellot was consequently obligatory upon both ; but there is no evidence in the case to show that they were partners. The declaration avers that the defendants were co-partners in the building and erecting of divers saw-mills, grist-mills, and other hydraulic works, and that in the prosecution of their co-partnership business, they employed' the Taylors to build the saw mill which has been mentioned; but the proof does not sustain the allegation. It was conceded on the argument, that the evidence did not show a general partnership in the business of building mills, as the declaration alleges; but it was contended that there was a special or limited partnership in relation to the mill erected by the Taylors, and the case of Cumpston v. M’Nair, 1 Wendell, 457, was cited in support of this position. In that case, Drake & Wheeler were joint owners of certain personal property (a quantity of salt) which Drake, with the assent of Wheeler, took to market, under an agreement-between them that every thing should be done to forward the business, and that the property should be turned into money, and be applied to the satisfaction of ■ their joint debt. The salt was marked with the initials of both their names. A third person advanced money to Drake to pay the duties on the salt, and also transported the property to the place of sale in Pennsylvania, and for his money and services Drake gave him a note signed Drake & Wheeler; and when this fact was afterwards reported to Wheeler, he made no objections. The court held that there was a limited partnership between Drake & Wheeler, in the particular transaction in relation to which the note was given ; that there was a joint purchase for a particular adventure, upon an agreement to share jointly in the ultimate profit and loss. But in the ease before the court, there was no joint purchase for a particular adventure — no agreement to share ultimately in the profit and loss. The defendants entered into a joint contract with the two Taylors, and were bound to perform it on their part — not however on the ground that they were partners, but on the ground of an express joint undertaking ; and' whatever were their obligations to the builders, it would not make them partners in relation to other persons. They were also answerable to Porter & Co. for the goods ; not because they were partners, but becase they both ordered the delivery. There is nothing from which a partnership between the defendants can be inferred, but the single fact that they entered into a contract on the one part, and the two Taylors on the other, by which the Taylors were to build a saw-mill for them at Ilammondsport, and the defendants were to pay them $860 for doing it. The only fair inference which can be deduced from this fact is, that the defendants, as tenants in common or otherwise, were the owners of a mill site, on which they intended to erect a mill; and they made a contract with the proper mechanics for that purpose. The mill, when completed, like the site which it occupied, would be real estate, and the defendants would hold it by the same tenure as that by which they held the land. Whatever that tenure might be, it would not constitute them partners; they might or might not become partners in carrying on milling business. A community of interest in land does not make men partners, nor does a mere community of interest in personal property. There must be *114 some joint adventure, and an agreement to share in the profit and loss of the undertaking. The plaintiff should have furnished proof, instead of argument, to show the partnership. In Post v. Kimberly, 9 Johns. R. 503, Kent, Ch. J., remarked that “ the parties had no previous partnership or previous connection with each other in trade, and we are to make no intendment in favor of the partnership, so as to supply the absence of facts.” In the same case, Spencer, J. (p. 496) says, “ To constitute a partnership in a particular purchase, or in a single concern, there must either be a joint undertaking to pay, or an agreement to share in the profits and loss.” He was speaking of a trading adventure in personal property. “A joint undertaking to pay” had no particular bearing upon the case, and I think it may be doubted whether that branch of his remark was strictly accurate. Where two or more persons are partners, the promise of one binds the whole; but where two or more persons enter into a joint contract to pay or do any other act, the liability of the parties does not rest on the notion of a partnership between them, but results from their express agreement. The case of Ballou v. Spencer, 4 Cowen, 163, is in several respects, much like the one before the court, and is a decisive authority in favor of the defendants.
New trial granted.